UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

RECAP INVESTMENTS XI-FUND A, L.P., )
RECAP INVESTMENTS XI-FUND B, L.P., )
and CARLISLE GP, INC. )
                                  Plaintiffs, )
v.                                      )         1:10-cv-08612-VM

MCCULLOUGH HARRIS LLC, )
                                  Defendant. )
_____/ )

## MCCULLOUGH HARRIS LLC'S
## MOTION TO DISMISS AMENDED COMPLAINT

McCullough Harris LLC ("**McCullough Harris**") moves to dismiss the Amended Complaint filed by RECAP Investments XI-Fund A, L.P., RECAP Investments XI-Fund B, L.P., and Carlisle GP, Inc. (collectively "**Plaintiffs**") or, alternatively, to stay this case pending adjudication on the merits of the first-filed action in North Carolina, styled The Carlisle Apartments, L.P. and McCullough Harris LLC v. RECAP Investments XI-Fund A, L.P. RECAP Investments XI-Fund B, L.P., Carlisle GP, Inc. and GREP Southeast, LLC, Superior Court of Mecklenburg County, North Carolina Case No. 10-CVS-23037 (the "**NC Case**"). This Motion is filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3) and applicable law.

### MEMORANDUM OF LAW

#### *FACTUAL BACKGROUND*

1.    On January 2, 2008, RECAP Investments XI-Fund A, L.P., RECAP Investments XI-Fund B, L.P. (collectively "**RECP**"), and McCullough Harris entered into a Limited Partnership Agreement (the "**LPA**") to form a Delaware limited partnership known as The Carlisle Apartments, L.P. (the "**Partnership**").

2. Section 4 of the LPA dictates that the stated purpose of the Partnership, which provides in pertinent part:

> The purpose of the Partnership shall be to acquire the Land; to effect the Subdivision; to own, develop, construct, improve, operate, lease, manage, finance, refinance, hold, sell, exchange and dispose of, or otherwise deal with, the Project[1]; and to engage in activities that are preparatory to the development of the Project. In furtherance thereof, the Partnership may engage in all activities necessary, customary, convenient or incidental to the foregoing.

3. McCullough Harris as the General Partner of the Partnership was tasked with the responsibility of managing the day-to-day operations of the 372-unit apartment complex and the remainder of the Project (the "**NC Property**"), including the leasing of individual apartment units, the receipt of rental payments and the payment of accounts payable.

4. On or before <u>November 12, 2010</u>, RECP made the decision that McCullough Harris should <u>no</u> longer be authorized to act as the General Partner for the Partnership and took unilateral and unjustified action to (a) convert McCullough Harris's general partnership interest in the Partnership to a limited partnership interest with no management rights whatsoever, (b) install RECP-affiliate Carlisle GP, Inc. as the new general partner of the Partnership, and (c) take control of the Partnership and the NC Property (including the leases and the rents relating thereto.

5. RECP gave written notice of its takeover of the Partnership and the NC Property to: McCullough Harris, Ovation Property Management, LLC, Mid-America Apartment Communities, Inc., CB Richard Ellis, Compass Bank, Wachovia Bank, and other not known at this time. [Copies of the correspondence are attached hereto as Composite Exhibit "A"].

---

[1] The "Project" is defined on page 15 of the LPA as follows: "The 'Project' means the Land and the 372-unit apartment community and related amenities and infrastructure to be constructed on the Multifamily Parcel after the Subdivision and the conveyance of the Commercial Parcel from the Partnership to the General Partner or its affiliate."

6. On November 12, 2010, The Carlisle Apartments, L.P and McCullough Harris brought the dispute to the attention of the Superior Court for Mecklenburg County, North Carolina, by filing a Complaint and Motion for Temporary Restraining Order in the NC Case. [Copies of the NC Complaint and the Verified First Amended Complaint (without exhibits thereto) is attached hereto as Composite Exhibit "**B**"].

7. The NC Case (assigned) invokes the *quasi-in-rem* jurisdiction of the NC Superior Court and seeks adjudication of four counts:

> Count I:   Breach of Contact seeking money damages.
>
> Count II:  Declaratory Judgment seeking a declaration of rights under the LPA.
>
> Count III: Breach of Fiduciary Duty seeking money damages.
>
> Count IV:  Injunctive Relief seeking to return the parties and the NC Property to *status quo ante*.

8. The NC Complaint alleges that Plaintiffs breached the LPA when they improperly seized control of the NC Property and unlawfully attempted to take control of the Partnership's North Carolina assets (including bank accounts) and convert more than $900,000.00 to their own use.

9. Specifically, the NC Case alleges that, by seizing the NC Property, Plaintiffs (specifically RECP): (a) unlawfully deprived McCullough Harris and the Partnership of the ability to operate the NC Property; (b) unlawfully seized control of the accounts receivable in North Carolina; and (c) unlawfully deprived McCullough Harris and the Partnership of their rightful use of their personal property and the NC Property.

10. In support of McCullough Harris's Motion for Temporary Restraining Order in the State Action, Donald E. Phillips submitted an Affidavit attesting that McCullough Harris (and its affiliate, Ovation Realty Management, LLC) was responsible for the day-to-day operations of the NC Property until Plaintiffs appeared at the NC Property on November 12, 2010, and took the keys from the apartment manager and seized control of the NC Property. The Affidavit also declares that Plaintiffs took rent funds from the tenants of the NC Property and converted those funds to their own use. [A copy of the Affidavit is attached hereto as Exhibit "C"].

11. On November 12, 2010, North Carolina Superior Court Judge Lane Williamson conducted a hearing on McCullough Harris's Motion for Temporary Restraining Order (the "**TRO Hearing**"). Plaintiffs appeared before the NC Court, presented legal arguments, and sought affirmative relief from the NC Court by demanding that the NC Court rule that Carlisle GP, Inc. should: (a) be adjudicated to have full and exclusive authorization ordained by the NC Court to take exclusive control of the Partnership's bank accounts; (b) take exclusive control of the Partnership's accounts receivable; (c) take exclusive control of the Partnership's personal property; and (d) take exclusive control of the operation and management of the NC Property.

12. On November 15, 2010, RECP filed their Complaint in the case at bar. [The initially-filed Complaint has since been amended to retract the misrepresentations made in ¶ 74 thereof regarding the rulings made by the NC Court on November 12, 2010.]

13. The Complaint in this case asserts two causes of action, both of which purport to seek a declaration that RECP's affiliate, Carlisle GP, Inc. is the general partner of the Partnership and the only entity authorized to conduct business on behalf of the Partnership.

14. The NC Action and this action involve identical causes of action, the same legal and factual issues, and all of the individuals involved in the various parties in interest. The basis for both actions is the dispute between and amongst the parties involved in the Partnership and control of the NC Property.

15. On November 16, 2010, pursuant to the NC Court's instructions, each party submitted a competing proposed Order as to the outcome of the November 12, 2010 hearing in the NC Case.

16. On November 17, 2010, the NC Court held an Emergency Hearing on the competing proposed Orders. The State Court determined that Plaintiffs and GREP misrepresented the NC Court's rulings from the November 12, 2010 hearing in various communications and in various court-filed documents.

17. The NC Court required Plaintiffs to amend the Complaint in this action to take out any misrepresentation of the NC Court's ruling. The NC Court also required Plaintiffs to write letters to all persons with whom they communicated in reference to the NC Court's ruling and notify them that Plaintiff's representations in reference to the Order were inaccurate. [A copy of the Order actually entered by the NC Court on November 17, 2010 is attached hereto as Exhibit "**D**"].

**LEGAL ARGUMENT**

***28 U.S.C. § 1391***

Plaintiffs contend that this "Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because this is an action between citizens of different states and the matter in controversy exceeds $75,000.00." See Complaint @ ¶ 11. Plaintiffs contend that venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 and because the parties

"contractually agreed to have any disputes heard by the federal courts in New York County." See Complaint @ ¶ 12.

28 U.S.C. § 1391 provides, in pertinent part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
>
> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

Plaintiffs' reliance upon 28 U.S.C. § 1391 to support their contention that venue is proper in the Southern District of New York is misguided. None of the bases for venue set forth in Section 1391 is applicable here. Specifically: (a) McCullough Harris does not reside in New York; (b) McCullough Harris does not have any contacts in New York (let alone, sufficient "minimum contacts" to subject it to personal jurisdiction in New York; (c) none of the events or omissions giving rise to the claim occurred in New York; and (d) none of the property that is the subject of the action is situated in New York.

### *Abstention*

As a general matter, "both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other." *Princess Lida of Thurn and Taxis v. Thompson*, 305 U.S. 456, 466 (1939). However, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 282 (2005). Specifically, a court that has first assumed jurisdiction in a *quasi-in-rem* action may exercise jurisdiction to the exclusion of all other courts. *Colorado River Water Conservation v. U.S.*, 424 U.S. 800, 818 (1976).

*Quasi-in-rem* jurisdiction is defined as "[J]urisdiction of a court based on a person's interest in property within the jurisdiction of the court. Refers to proceedings that are brought against the defendant personally; yet it is defendant's interest in the property that serves as the basis of the jurisdiction." Black's Law Dictionary 1245 (6th ed. 1990). *Shaffer v. Heitner*, 433 U.S. 186 (1977), is the seminal case addressing *quasi-in-rem* jurisdiction. The property at issue in the *Shaffer* case was stock, options, and warrants along with all rights, debts, or credits accrued to or for the benefit of any of the named defendants. *Id.*

The basis for jurisdiction in the NC Case is *quasi-in-rem* because the dispute implicates exclusively (a) the parties' respective interest in the Partnership whose sole operations are in North Carolina and (b) the rightful control and operation of the NC Property. The NC Case was commenced on November 12, 2010, before Plaintiffs commenced this action on November 15, 2010. Plaintiffs appeared before the NC Court for the TRO Hearing, presented legal arguments, and expressly requested that the NC Court decide which party should: (a) take control of the

Partnership's bank accounts; (b) take control of the Partnership's accounts receivable; (c) take control of the Partnership's personal property; and (d) operate and manage the NC Property.

The *Princess Lida* Doctrine requires a federal court must yield jurisdiction to a state court that has first acquired jurisdiction *in-rem* or *quasi-in-rem*. *Carvel v. Thomas and Agnes Carvel Foundation*, 188 F. 3d 83 (2d Cir. 1999). State courts have exclusive jurisdiction to proceed for *in-rem* and *quasi-in-rem* actions when the court has custody of such property. *Donovan v. City of Dallas*, 377 U.S. 408, 412 (1964). If the state court first assumes jurisdiction over the property that court can "maintain and exercise that jurisdiction to the exclusion of the other" and such authority of the state court "is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted." *Princess Lida* at 466. "Where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court." *Donovan v. City of Dallas*, 377 U.S. at 413 citing *Peck v. Jenness*, 48 U.S. 612, 625 (1849).

The Supreme Court did limit somewhat the application of the *Princess Lida* doctrine, saying that it "has no application to a case in federal court based upon diversity of citizenship, wherein the plaintiff seeks merely an adjudication of his right of his interest as a basis of claim against a fund in possession of a state court". *Princess Lida*, 305 U.S. at 466-67. However, in instances where the state court is to determine which party was in control of the funds at issue, the state court has *quasi-in-rem* jurisdiction and to the exclusion of the federal court. *See Bank of New York & Trust Co. v. President and Directors of Manhattan Co.*, 296 U.S. 463, 477 (1936) (dispute over ownership of funds). "If the two suits are *in rem* or *quasi in rem*, so that the court must have possession or control of the res in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other." *Id.* The

*Princess Lida* Doctrine applies in any suit "where, to give effect to its jurisdiction, the court must control the property." *Carvel v. The Thomas and Agnes Carvel Foundation*, 188 F. 3d 83, 86 (C.A. 2d 1999).

"The circumstances permitting the **dismissal** of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are far more limited that the circumstances appropriate for **abstention**." *Colorado River Water Conservation v. U.S.*, 424 U.S. at 818 (emphasis added). "In assessing the appropriateness of a dismissal in the event of an exercise of concurrent jurisdiction, a federal court must also consider such factors as [1] the inconvenience of the federal forum; [2] the desirability of avoiding piecemeal litigation; and [3] the order in which jurisdiction was obtained by the concurrent forums." *Colorado River Water Conservation v. U.S.*, 424 U.S. at 818.

In the instant situation, dismissal is the appropriate remedy (although McCullough Harris would "settle" for abstention).

Specifically, the heightened standard for dismissal is met here as follows: **First,** in the instant matter the entire dispute between the parties is focused upon the management and control of the NC Property. The most convenient and reasonable location to litigate this dispute would be before the state court that sits in the same jurisdiction as the Project and will be the only forum with jurisdiction to address concerns of BBVA Compass Bank as the senior secured lender. **Second,** due to the virtually identical nature of the State Action and the Federal Action, it is essentially guaranteed that the NC Court and this Court will be engaging in piecemeal litigation with a strong likelihood of conflicting decisions along the way. **Third,** the NC Case was filed first.

### *Demand For Attorneys' Fees*

McCullough Harris has retained the undersigned attorneys to represent its interests and is obligated to pay its attorneys a reasonable fee for their services. McCullough Harris is entitled to recover its legal expense pursuant to the Limited Partnership Agreement and prevailing law.

### *Conclusion*

Based upon the above and foregoing, McCullough Harris respectfully requests that this Court dismiss this action and/or abstain pending the adjudication on the merits of the NC Case.

WHEREFORE, this Court should:

(a) dismiss this action or abstain from proceeding pending resolution of the NC Case;

(b) award to McCullough Harris its attorneys' fees expended in the defense of this action; and

(c) grant to McCullough Harris all such other relief as is just and appropriate under the circumstances.

*/s/ Stanford R. Solomon*
Stanford R. Solomon
Florida Bar No: 302147
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard
Tampa, Florida 33606
(813) 225-1818 (Tel)
**ATTORNEYS FOR MCCULLOUGH HARRIS**

-and-

David Siegal
New York Bar No.
Haynes & Boone, LLP
1221 Avenue of the Americas
26th Floor
New York, New York 10020
(212) 659-4999
(212) 884-8222

## Certificate of Service

I certify that I have electronically filed the foregoing Motion to Dismiss Complaint with the Clerk of Court using the CM/ECF system and have furnished a copy by email to Jonathan Hochman on November 22, 2010.

*/s/ Stanford R. Solomon*

Stanford R. Solomon
Florida Bar No: 302147
**THE SOLOMON LAW GROUP, P.A.**
1881 West Kennedy Boulevard
Tampa, Florida 33606
(813) 225-1818 (Tel)
**ATTORNEYS FOR MCCULLOUGH HARRIS**

-and-

David Siegal
New York Bar No.
Haynes & Boone, LLP
1221 Avenue of the Americas
26th Floor
New York, New York 10020
(212) 659-4999
(212) 884-8222